IN THE UNIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD GUNTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, Acting | : | |
| Commissioner of Social Security | : | NO. 12-6498 |

### <u>ORDER</u>

**AND NOW**, this 25th day of August, 2014, upon consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review (Docket No. 9), Defendant's Response thereto, Plaintiff's Reply, the Report and Recommendation of United States Magistrate Judge Lynne A. Sitarski (Docket No. 15), and Plaintiff's Objections thereto (Docket No. 16), **IT IS HEREBY ORDERED** as follows:

1.    Plaintiff's Objections are **OVERRULED**.

2.    The Report and Recommendation is **APPROVED** and **ADOPTED**.

3.    Plaintiff's Request for Review is **DENIED**.

4.    The Decision of the Commissioner is **AFFIRMED**.

The ALJ in this case denied Plaintiff's request for disability insurance benefits and supplemental security income, finding that Plaintiff had five severe impairments -- monocular vision, arthritis, depression, sleep apnea, and obesity -- but that Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work.  Among other things, the ALJ specifically found that Plaintiff had the RFC to stand and walk for six hours in an eight-hour day and that, despite Plaintiff's depression, he was able to carry out simple routine tasks and make simple decisions.

Plaintiff filed a Request for Review of the ALJ's decision, in which he argued that (1) the ALJ's conclusion that he could sit, stand and walk for six hours in an eight-hour day was not based

on substantial evidence, (2) the ALJ erred in discounting two scores of 40 that Plaintiff received in Global Assessment of Functioning ("GAF") testing when assessing Plaintiff's mental health, and (3) the hypothetical that the ALJ posed to the vocational expert ("VE") failed to take into account all of Plaintiff's limitations.   Judge Sitarski carefully considered these three issues and recommended that we deny the Request for Review.   Plaintiff has now filed objections to Judge Sitarski's Report and Recommendation ("R&R").   In his Objections, Plaintiff essentially repeats the arguments that he made in his Request for Review and contends that Judge Sitarski repeated the errors that were made by the ALJ.

Judicial review of the Commissioner's final decision is limited, and we will not disturb the ALJ's findings of fact if they are supported by substantial evidence.   Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir.2008) (citing 42 U.S.C. § 405(g)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Brownawell, 554 F.3d at 355 (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003), and citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008)). The ALJ's legal conclusions are subject to plenary review.   Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)). We review de novo those portions of the Magistrate Judge's report and recommendation to which objections are made.   28 U.S.C. § 636(b)(1).

Plaintiff first objects to Judge Sitarski's failure to find error in the ALJ's determination that Plaintiff could sit, stand, and walk for six hours in an eight-hour day, in spite of claimed arthritis in his knees, ankles and back.   Specifically, he contends that the ALJ improperly weighed the

medical opinions in the file and failed to consider the impact of Plaintiff's morbid obesity. Plaintiff argues that both the ALJ and Judge Sitarski erred in characterizing the opinion of Dr. Stephen Bosacco, an orthopedist who performed a single consultative physical examination, as stating that Plaintiff has no restrictions on sitting, standing or walking and then relying on that opinion.  (R. 27, 29; R&R at 6-7, 14.)    According to Plaintiff, the ALJ should have credited and adopted the opinions of Dr. Haresh Punjabi, who performed a single consultative physical examination, and Dr. Juan Mari-Mayans, a state agency physician who reviewed Plaintiff's file, both of whom diagnosed Plaintiff with possible degenerative joint disease and/or arthritis in the knees, as well as morbid obesity, and who opined that Plaintiff had the RFC to stand and/or walk for only three hours or less within an eight-hour day.  (See R. 278, 282, 384, 388.)

The ALJ's obligation in reviewing a social security application is to "consider the medical opinions in [the] case record together with the rest of the relevant evidence."  20 C.F.R. § 404.1527(b).  The ALJ may give medical opinions the weight she deems appropriate based on various factors such as whether the physician examined or treated the claimant, whether medical signs and laboratory findings support the opinion, and whether the opinion is consistent with the record as a whole.  Id. § 404.1527(c).  Upon our de novo review of the record, we conclude, like Judge Sitarski did, that the ALJ thoroughly reviewed the medical opinions and other evidence in the record and adequately explained that the objective medical evidence does not support the strict limitations on standing and walking suggested by Drs. Punjabi and Mari-Mayans, neither of whom were treating physicians, but rather supports Dr. Bosacco's conclusion that Plaintiff has no restrictions on standing or walking.  The ALJ noted that, among other evidence, the record reflects that, in June of 2007, Plaintiff was diagnosed with degenerative joint disease and osteoarthritis in of the right knee and shoulder, but nevertheless demonstrated a full range of

motion in his right knee, which was non-tender and showed no effusion.  (R. 26 (citing R. 203-04).)   He further noted that an August 2007 blood test came back negative for rheumatoid arthritis; that a 2007 X-ray showed some degeneration and mild/moderate deformity in Plaintiff's knees but that otherwise both knees were within normal limits; that a 2007 CT scan showed a normal cervical spine; and that additional 2007 x-rays showed only minor degenerative changes of the lumbar spine and no degenerative arthritis or significant soft tissue swelling in Plaintiff's ankles.  (R. 27 (citing R. 209, 237, 239-240).)   Furthermore, the ALJ observed, the records reflected minimal treatment or even mention of arthritic pain between August 2008 and July 2009, when Dr. Bosacco, upon examining Plaintiff, found nothing to justify a diagnosis of arthritis and, overall, saw "no objective evidence of anything significant."  (R. 27 (citing R. 376).)   Moreover, Dr. Bosacco suggested an MRI of Plaintiff's knee due to some tenderness in the soft tissue, but the medical records do not reflect that an MRI was ever done or that Plaintiff received any other follow-up treatment for his knee or back.  (Id.)

Given the above objective medical evidence, the lack of evidence of any recent follow-up treatment for back or knee problems, and Plaintiff's infrequent complaints of back or knee pain to treating sources, the ALJ adopted the "finding implicit in Dr. Bosacco's opinion" that Plaintiff has no restrictions on sitting, standing or walking.[1]  (R. 27.)   On de novo review, we, like Judge Sitarski, can find no error in this conclusion as there is substantial evidence to support it and the ALJ has adequately explained his discounting of the contrary opinions of Drs. Punjabi and

---

[1] Plaintiff argues that Dr. Bosacco never actually opined on whether Plaintiff's condition required limitations on standing and walking and, therefore, the ALJ erred in characterizing the doctor's opinion as stating that no limitations were required.  However, upon examining Plaintiff, Dr. Bosacco set forth an "Assessment and Plan" that included no restrictions and simply referred Plaintiff for MRI testing.  Accordingly, we find no error in the ALJ's conclusion that Dr. Bosacco's report contained an implicit opinion that Plaintiff had no restrictions on sitting, standing and walking.  (R. 27.)

Mari-Mayans, which lack support in the objective evidence.   See Bryan v. Comm'r of Soc. Sec., 383 F. App'x 140, 145 (3d Cir. 2010) (stating that we may not "re-weigh the evidence or substitute our own judgment for that of the ALJ," and we must "uphold the Commissioner's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." (citations omitted)).

We also reject Plaintiff's assertion that Judge Sitarski and the ALJ did not adequately consider the effect of Plaintiff's obesity on his arthritic condition.   In this regard, we note that the ALJ explicitly acknowledged his obligation to take Plaintiff's obesity into account in his sequential disability evaluation, including when he was assessing the pain and limitations associated with Plaintiff's arthritis, and stated that he did, in fact, take Plaintiff's obesity into account.   (R. 24-25.)   Moreover, the ALJ simply evaluated the medical opinions in the record, which were offered by doctors who were no doubt aware of Plaintiff's obesity.   See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (stating that "[b]ecause [plaintiff's] doctors must also be viewed as aware of [plaintiff's] obvious obesity, . . . the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition.")   We therefore overrule Plaintiff's objections to the R&R insofar as he contends that Judge Sitarski erred in failing to recommend that the ALJ's finding that he could stand and walk for six hours a day was not based on substantial evidence, was based on an inadequate weighing of the medical opinions in the record, and failed to take into account Plaintiff's obesity.

Plaintiff also objects to Judge Sitarski's failure to recommend that the ALJ erroneously discounted Plaintiff's GAF score of 40 in assessing Plaintiff's mental limitations and restrictions, and erroneously relied on a faulty August 12, 2009 mental health assessment from Dr. Paul Taren, the state agency consultant.   The ALJ, however, adequately explained his conclusion that the

GAF scores, which are indicative of "'[s]ome impairment in reality testing or communication'" or "'a major impairment in several areas, such as work or school, family relations, judgment, thinking or mood,'" were nevertheless inconsistent with the record as a whole and thus not determinative of Plaintiff's mental impairment.  (See R. 28 (quoting Diagnostic and Statistical Manual of Mental Disorders, 4th ed., at 34)); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (stating that an ALJ must only "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition").  Among other things, the ALJ reviewed the Plaintiff's mental health treatment records from March of 2009 (when the first GAF testing was done) to October of 2010 (when the second GAF testing was done), and noted that the records reflected that Plaintiff was doing well during that time and was "responding positively to interventions."[2]  (R. 28; R. 413-26.)  Moreover, on August 12, 2009, Dr. Taren assessed Plaintiff and found no areas of significant limitation, noting in particular that there was no indication that Plaintiff was significantly limited in his ability to understand and remember short and simple instructions, make simple work-related decisions, and maintain regular attendance and be punctual within customary tolerances.  (R. 395-96.)

Plaintiff nevertheless contends that Judge Sitarski erred in evaluating the ALJ's assessment of the mental health evidence insofar as she did not consider evidence in Dr. Mark Kieh's treatment notes that Plaintiff's experienced a depressed mood, difficulty sleeping, feelings of emptiness, racing thoughts and suicidal ideation, and found that the ALJ properly adopted Dr.

---

[2] Plaintiff contends that the ALJ and Judge Sitarski ignored the fact that these same records repeatedly reflect Plaintiff's depressed mood and discuss trouble sleeping, feeling of emptiness, racing thoughts and suicidal ideation, and contends that these notations belie the ALJ's determination that Plaintiff did not have thoughts about harming himself.  However, the notes clearly state that Plaintiff denied any suicidal thoughts between July 2009 and September 2010. (R. 420-26.)

Taren's opinion in spite of Dr. Taren's failure to take into account an October 26, 2010 letter from Dr. Kieh.   However, the notations in Dr. Kieh's treatment notes on which Plaintiff relies do not negate the overall conclusion that the ALJ reached from Dr. Kieh's records that Plaintiff was doing well.   Moreover, as the ALJ noted, there is no indication in the records that Dr. Kieh harbored concerns about Plaintiff's progress; indeed, he did not recommend any modification of Plaintiff's medication and did not recommend that Plaintiff undergo more intensive treatment.   (See R. 29.) Accordingly, we do not find the periodic notations in Dr. Kieh's notes to depression, sleeplessness, feelings of emptiness, racing thoughts, and suicidal ideation to undermine the ALJ's conclusion, supported by substantial evidence, that Plaintiff was doing well overall and had the mental RFC suggested by Dr. Taren.   We also cannot find fault in the ALJ's refusal to discredit Dr. Taren on account of the doctor's failure to consider an October 2010 report from Dr. Kieh, because Dr. Taren's report was prepared in August of 2009, many months before Dr. Kieh wrote his letter. (See R. 395-96, 440.)   We therefore overrule Plaintiff's objection to Judge Sitarski's recommendation concerning the ALJ's RFC findings regarding his mental capacity and, in particular, to the ALJ's failure to give controlling weight to Plaintiff's GAF scores.

Finally, Plaintiff objects to Judge Sitarski's failure to find error in the hypothetical that the ALJ gave to the vocational expert ("VE").   Specifically, Plaintiff contends that the hypothetical did not adequately acknowledge Dr. Taren's finding that Plaintiff had moderate limitations in maintaining concentration, persistence or pace.   However, the hypothetical asked the VE to opine as to whether Plaintiff could perform past relevant unskilled work, assuming that Plaintiff was able to carry out short and simple instructions, and carry out simple, routine tasks.   (R. 60-61.)   This limitation was sufficient to account for a moderate limitation in maintaining concentration, persistence and pace.   See Suarez v. Astrue, Civ. A. No. 12-3373, 2013 WL 7203845, at *6 n.1

(E.D. Pa. May 8, 2013) (citing <u>Douglas v. Astrue</u>, Civ. A. No. 09-1535, 2011 WL 482501, at *4-5 (E.D. Pa. Feb. 4, 2011)).   Accordingly, we overrule Plaintiff objection to Judge Sitarski's report and recommendation insofar as it concerns the hypothetical posed to the VE.

For the above reasons, we overrule all of Plaintiff's objections to Judge Sitarski's recommendations, approve and adopt the R&R, and enter judgment in favor of Defendant.

BY THE COURT:

/s/ John R. Padova, J.
_____

John R. Padova, J.